UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID TANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-CV-1116 PLC |
| | ) |
| EATON CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on (1) Plaintiff David Tang's Motion to Alter or Amend Judgment [ECF No. 27] and (2) Defendant Eaton Corporation's Motion to Strike Plaintiff's Reply to the motion or, in the alternative, Motion for Leave to File Sur-Reply in Opposition [ECF No. 37]. Plaintiff asserts he is entitled to relief under Federal Rule of Civil Procedure 59(e) because the Court's May 16, 2023 Judgment contained a "'manifest error of law' in its citations with respect to Bazemore v. Friday, 478 U.S. 385, 395 (1986)" and in concluding that Plaintiff's Charge of Discrimination (the "Charge") was untimely filed with the Equal Employment Opportunity Commission (the "EEOC"). [ECF No. 27] Defendant opposes Plaintiff's motion contending the Court's ruling is consistent with controlling precedent and that Plaintiff has failed to demonstrate a cognizable basis for reconsideration of the Court's ruling. [ECF No. 29]

In his reply, Plaintiff asserts, for the first time, that his Charge was timely filed because the Charge and complaint "[t]aken as a whole…state a claim of hostile work environment that was ongoing and continuous[.]" [ECF No. 36] Defendant filed a Motion to Strike Plaintiff's Reply or, in the alternative, a Motion for Leave to File a Sur-Reply in Opposition. [ECF No. 37] Defendant requests that the Court strike Plaintiff's reply for improperly asserting a new argument or, in the

alternative, grant Defendant leave to file a sur-reply to address Plaintiff's newly raised hostile work environment claim. [ECF No. 37] Plaintiff opposes Defendant's Motion to Strike, requesting the Court dismiss Defendant's motion because it failed to file a separate memorandum in support of the motion as required by Local Rule 4.01(A). [ECF No. 44] For the reasons set forth below, the Court denies Plaintiff's Motion to Alter or Amend the Judgment [ECF No. 27] and denies as moot Defendant's Motion to Strike or, in the alternative, Motion for Leave to File Sur-Reply in Opposition [ECF No. 37].

## I.     Background

On December 17, 2018, after terminating Plaintiff's employment several weeks earlier, Defendant reinstated Plaintiff but placed him in a lower position. [ECF No. 1, ¶ 10 -12, Ex. A] On April 26, 2019, Plaintiff's shift supervisor recommended to Defendant's plant manager that Plaintiff be reinstated into his former position. [ECF No. 1, ¶14]  Defendant nevertheless maintained Plaintiff in the lower position. [Id. at ¶ 15]

On February 25, 2020, Plaintiff filed a charge with the EEOC alleging Defendant discriminated against Plaintiff on the basis of age and national origin. [Id. at ¶ 15, Ex. A] In the charge, Plaintiff checked the box for "continuing action" and alleged he was the victim of "continuing and ongoing discrimination" beginning December 17, 2018, the date Defendant reinstated Plaintiff's employment in a lower position. [ECF No. 1 at ¶ 3, Ex. A] Plaintiff included factual allegations related to his termination and reinstatement, specifically alleging he was reinstated at a lower position due to his age and national origin. [ECF No. 1, Ex. A]

After the EEOC issued a "Right to Sue" letter, Plaintiff filed a complaint in this Court bringing claims of national origin discrimination pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, et seq., and age discrimination pursuant to the Age

Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, et seq. [ECF No. 1] Plaintiff alleged he was "the subject of ongoing and continuous age and national origin discrimination by Defendant." [Id. at ¶ 8] Specifically, Plaintiff asserted he was demoted to "less desirable work" and kept in this position after his supervisor's April 2019 communication to Defendant's plant manager based on his age and national origin.[1] [ECF No. 1, ¶13-16] Plaintiff also alleged that some of Defendant's employees, including Plaintiff's supervisors, were "[i]n continuous and ongoing fashion…overly [sic] racist, offensive, harsh, and critical of Plaintiff's age and national origin" and that "[b]ased on comments and prejudices regarding Plaintiff's age and national origin, Plaintiff was clearly the target of continuous and ongoing negative behaviors because of age and national origin discrimination by Defendant and its employees and supervisors." [ECF No. 1, ¶¶ 9, 13]

Defendant moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), contending Plaintiff's claims were time-barred because he failed to file his discrimination Charge within 300 days after the alleged acts of discrimination as required by 42 U.S.C. §2000e-5(e)(1) and 29 U.S.C. §626(d)(1)(B). [ECF No. 4 at ¶¶ 2, 3, 4] Specifically, Defendant contended (1) Plaintiff's December 2018 reinstatement to a lower position was an alleged discrete act of discrimination that occurred outside of the 300-day limitations period, and (2) Plaintiff's continuation in that position after his supervisor recommended Plaintiff's reinstatement to his former position in April 2019 letter was not an adverse employment action and, to the extent it could be construed as such, was also outside the limitations period. [ECF No. 4 & 5] Defendant also argued that, to the extent Plaintiff was attempting to assert a claim for hostile work

---

[1] Although Plaintiff's Charge and complaint include facts related to his termination, he did not allege that his termination was discriminatory or seek any relief related to this event. [ECF No. 1, Ex. A]

environment, Plaintiff's claim should be dismissed for failing to exhaust his administrative remedies by including factual allegations supporting the claim in the Charge. [ECF No. 5]

Plaintiff responded that his Charge was timely filed because the alleged discrimination was "ongoing and continuous[,]" in that "[e]very day Plaintiff [was] on that lower job [was] another event of 'ongoing and continuous' discrimination." [ECF No. 17, ¶¶ 5, 7, 9] Plaintiff further argued there was a reasonable inference that Defendant made a discriminatory "employment 'determination'" after his supervisor's April 2019 reinstatement recommendation. [Id.] Plaintiff did not cite to any legal authority supporting his assertion that an employee's continuation in a lower position constituted an ongoing violation. [ECF No. 17] Plaintiff also did not respond to Defendant's argument that Plaintiff failed to exhaust his administrative remedies with respect to any potential hostile work environment claim. [ECF No. 17]

The Court held a hearing on the motion to dismiss. At the hearing, Defendant reiterated that Plaintiff failed to exhaust his administrative remedies in connection with a hostile work environment claim. Plaintiff did not respond to this argument or assert that his Charge was a timely because it raised an ongoing and continuous claim of hostile work environment. Instead, Plaintiff relied on language from a United States Supreme Court decision, Bazemore v. Friday, 478 U.S. 385, 395 (1986), stating that "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII…[,]" and asserted this language supported a finding that Plaintiff was suffering from a new, actionable violation every two weeks when he is paid a decreased salary resulting from his December 2018 reinstatement in a lower position.

On May 16, 2023, the Court dismissed Plaintiff's complaint finding he failed to timely file his Charge. [ECF No. 25] Specifically, the Court found that Plaintiff's reinstatement to a lower

4

position on December 17, 2018 was a discrete act that occurred outside of the 300-day limitations period. [ECF No. 25]  The Court also found that Plaintiff failed to allege an adverse employment decision as a result of Plaintiff's supervisor's recommendation to reinstate Plaintiff to his former position on April 26, 2019, much less that Defendant made an discriminatory decision more than 6 days later within the statutory deadline.  [ECF No. 25] The Court rejected Plaintiff's contention that the discrimination was "ongoing and continuous" and, thus, not subject to the statute of limitations by virtue of his continuation in the lower position. In doing so, the Court found the language relied upon by Plaintiff from Bazemore was inapplicable to Plaintiff's case and inconsistent with Supreme Court precedent in National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), which specifically addresses the timeliness of EEOC charges of discrimination for discrete acts. The Court also observed that "[h]ostile work environment claims are the exception to the bar on the consideration of discriminatory actions that occur outside the statutory period" but that it was not addressing the issue because Plaintiff "does not raise a hostile work environment claim[.]" [ECF No. 25, pg. 3, fn. 2; pg. 6]

In his current motion, Plaintiff asserts he is entitled to relief under Rule 59(e) because the Court's May 16, 2023 Judgment contained a "'manifest error of law' in its citations with respect to Bazemore v. Friday, 478 U.S. 385, 395 (1986) and with respect to its judgment that Plaintiff's EEOC charge was not timely filed." [ECF No. 27]

II.     **Legal Standard**

Federal Rule of Civil Procedure 59(e) was adopted to clarify a district court's power to correct its own mistakes in the time period immediately following entry of judgment. Norman v. Arkansas Dep't of Educ., 79 F.3d 748, 750 (8th Cir. 1996) (citing White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445 (1982)). "Rule 59(e) motions serve a limited function of

5

correcting 'manifest errors of law or fact or present[ing] newly discovered evidence.'" Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998) (quoting Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988)). Therefore, a Rule 59(e) motion must be based on one of three grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice." Clayton v. Dejoy, No. 4:18-CV-01039-JAR, 2020 WL 7625010, at *1 (E.D. Mo. Dec. 22, 2020), aff'd, 854 F. App'x 772 (8th Cir. 2021) (quoting Bannister v. Armontrout, 807 F. Supp. 516, 556 (W.D. Mo. 1991), aff'd, 4 F.3d 1434 (8th Cir. 1993)). The Court has broad discretion in determining whether to grant a Rule 59(e) motion to alter or amend the judgment. Innovative Home Health Care, Inc., 141 F.3d at 1286.

### III.   Discussion

#### A.   Plaintiff's Rule 59(e) Motion to Alter or Amend the Judgment

In his Rule 59(e) motion, Plaintiff contends the Court "made a 'manifest error of law' of its citations with respect to Bazemore v. Friday, 478 U.S. 385, 395 (1986) and with respect to its judgment that Plaintiff's EEOC charge was not timely filed." [ECF No. 27] Defendant opposes Plaintiff's motion contending the Court's ruling is consistent with controlling precedent and that Plaintiff has failed to demonstrate a cognizable basis for reconsideration of the Court's ruling. [ECF No. 29]

##### 1.  The Court's interpretation of *Bazemore*

Plaintiff contests the Court's finding that the language Plaintiff cited from Bazemore was out of context and inapplicable to the case, and as well as inconsistent with subsequent Supreme Court precedent addressing the timeliness of EEOC charges of discrimination for discrete acts. [ECF Nos. 27 & 28] Specifically, Plaintiff argues he "fails to see how…[Bazemore's] language

6

cuts off Plaintiff's assertion that…each paycheck is a wrong actionable under Title VII" and asserts that additional language from Bazemore "is even more convincing in support of Plaintiff." [ECF No. 28]

The excerpt relied upon by Plaintiff from Bazemore, comes from Section II, Subsection A of the opinion, which provides in relevant part:

> The first issue we must decide is whether the Court of Appeals erred in upholding the District Court's finding that petitioners had not proved by a preponderance of the evidence that respondents had discriminated against black Extension Service employees in violation of Title VII by paying them less than whites employed in the same positions. The Court of Appeals reasoned that the Extension Service was under no obligation to eliminate any salary disparity between blacks and whites that had its origin prior to 1972 when Title VII became applicable to public employers such as the Extension Service….
>
> Both the Court of Appeals and the District Court found that before the black and white Extension Service branches were merged in 1965, the Extension Service maintained two separate, racially segregated branches and paid black employees less than white employees….The Court of Appeals also acknowledged that after the merger of the Extension Service, "[s]ome pre-existing salary disparities continued to linger on," and that these disparities continued after Title VII became applicable to the Extension Service in March 1972 and after this suit was filed….The court interpreted petitioners' claim on appeal to be that "the pre-Act discriminatory difference in salaries should have been affirmatively eliminated but has not." 751 F.2d, at 670. Relying on our cases in *Hazelwood School District v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977), and *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), it concluded, "[w]e do not think this is the law." 751 F.2d, at 670.
>
> The error of the Court of Appeals with respect to salary disparities created prior to 1972 and perpetuated thereafter is too obvious to warrant extended discussion: that the Extension Service discriminated with respect to salaries prior to the time it was covered by Title VII does not excuse perpetuating that discrimination after the Extension Service became covered by Title VII. To hold otherwise would have the effect of exempting from liability those employers who were historically the greatest offenders of the rights of blacks. A pattern or practice that would have constituted a violation of Title VII, but for the fact that the statute had not yet become effective, became a violation upon Title VII's effective date, and to the extent an employer continued to engage in that act or practice, it is liable under that statute. While recovery may not be permitted for pre-1972 acts of

7

discrimination, to the extent that this discrimination was perpetuated after 1972, liability may be imposed.

*Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII.* The Court of Appeals plainly erred in holding that the pre-Act discriminatory difference in salaries did not have to be eliminated.

The Court of Appeals' conclusion that pre-Act salary discrimination did not have to be eliminated undermines the rest of its analysis of the District Court opinion.… Because, as we have explained, the Extension Service was under an obligation to eradicate salary disparities based on race that began prior to the effective date of Title VII,[] the Court of Appeals erred in concentrating its analysis solely on the issue whether there was racial discrimination in the ranking system.

Bazemore, 478 U.S. at 394–96 (emphasis added).

At the hearing on the motion to dismiss, Plaintiff cited the italicized language in support of his assertion that his reinstatement in a lower position results in ongoing and continuous discrimination because he receives a lower paycheck. In the Court's May 2023 Judgment, the Court found that this language from Bazemore, "rejected the contention that Title VII did not apply to current discriminatory compensation practices simply because those practices commenced before Title VII was passed" and resolved "whether Title VII prohibited current discriminatory conduct that originated in pre-Title VII discriminatory practices, not whether the employees' lawsuit was timely filed." [ECF No. 25] The Court also found that Plaintiff's interpretation of Bazemore was inconsistent "with the Supreme Court's subsequent holding in Morgan which specifically addressed the timeliness of EEOC charges of discrimination for discrete acts." [ECF No. 25]

Plaintiff asserts the Court's finding that the emphasized language "only applies to issues of pre and post Title VII and not ongoing discrimination is an erroneous reading of Bazemore" and that Bazemore "clearly says" "each paycheck is a wrong actionable under Title VII" and that

8

"if such discrimination was perpetuated after 1972, liability may be imposed." [ECF No. 28, ¶4-6] Plaintiff further contends the Court "cited [Morgan] for the idea that Morgan somehow overruled the pertinent language in Bazemore." [ECF No 28]

Once placed in context, it is clear that this section of Bazemore is, first and foremost, reversing the lower court's holding that an employer may escape liability for post-Act discriminatory practices simply because the employer permitted its pre-Act discriminatory practices to continue after the statute's enactment. Furthermore, as noted by the Court in the May 2023 Judgment, Bazemore involved discriminatory pay practices. Bazemore, 478 U.S. at 394, 395 (deciding whether the employees had proven that their employer "had discriminated against black Extension Service employees in violation of Title VII by paying them less than whites employed in the same positions" and finding that "[e]ach week's paycheck that delivers less to a black than to a *similarly situated* white is a wrong actionable under Title VII"). See Tademe v. Saint Cloud State University, 328 F.3d 982, 988-89 (8th Cir. 2003) (distinguishing salary discrimination from discrete discriminatory acts for purposes of the statute of limitations). At no point has Plaintiff claimed that Defendant engaged in discriminatory pay practices. Thus, Bazemore is largely inapplicable to the case *sub judice* and, once placed in context, Plaintiff's excerpted quotation from Bazemore does not lend support to Plaintiff's argument.

Furthermore, contrary to Plaintiff's assertion, the Court did not conclude "that Morgan somehow overruled the pertinent language in Bazemore." Instead, the Court determined that Plaintiff's interpretation of Bazemore was inconsistent "with the Supreme Court's subsequent holding in Morgan which specifically addressed the timeliness of EEOC charges of discrimination for discrete acts." [ECF No. 25] This finding by the Court is not a suggestion that

9

Morgan overruled Bazemore, but a recognition that Bazemore and Morgan address different issues and that Plaintiff's case is governed by the precedent established in Morgan.

### 2. The Court's Finding that Plaintiff's Charge was Untimely Filed

Plaintiff further contends the Court erred in concluding that his Charge was not timely filed. [ECF No. 28] Specifically, Plaintiff contends the Supreme Court's decision in Morgan, 536 U.S. 112-13, holding that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination" does not dictate a finding that the Charge was untimely because his continued receipt of a lower paycheck constitutes "more" than "mere continuity of employment" and transforms his case into one of ongoing and continuing discrimination. [ECF No. 28] Plaintiff persists in confusing the timing of a discriminatory act with the timing of the harm caused by a discriminatory act and his position is inconsistent with the overwhelming precedent establishing that these are two distinct concepts.

As noted by the Court in the May 2023 Judgment:

> The discriminatory act occurs when the employment decision is made and communicated to the plaintiff and it is insufficient for a complainant to allege that the past illegal act "gives present effect…and therefore perpetuates the consequences of forbidden discrimination." Ricks, 449 U.S. at 258 (quoting United Air Lines, Inc. v. Evans, 431 U.S. 553, 557 (1977)). Thus, the Court's "proper focus is upon the time of the discriminatory act, not upon the time at which the consequences of the acts became most painful." Ricks, 449 U.S. at 258 (quoting Abramson v. University of Hawaii, 594 F.2d 202, 209 (9th Cir.1979)). Similarly, the Eighth Circuit has held that the statute of limitations began to run when the employment decision was made, "even though the effects of that decision were felt much later." Tademe, 328 F.3d at 988; see also High v. Univ. of Minnesota, 236 F.3d 909, 909 (8th Cir. 2000) (noting the Eighth Circuit "has never applied the continuing violations doctrine to a discrete act, such as failure to promote"). [ECF No. 25]

Consistent with this precedent, as observed in the May 2023 Judgment, courts have recognized that termination, demotion, failure to promote, denial of transfer, and refusal to hire are discrete discriminatory acts that become actionable at the time they occurred. See ECF No.

10

25 citing to Morgan, 536 U.S. 101, 114 (termination, failure to promote, denial of transfer, and refusal to hire are discrete discriminatory acts); Tademe, 328 F.3d at 988 (discrimination in tenure and failure to promote are discrete discriminatory acts), Ross v. City of Independence, Mo, 76 Fed. Appx. 108, 109 (8th Cir. 2003) (each decision not to promote is a discrete event); Davis v. Lohr Distrib. Co, Inc., No. 4:18-cv-1437 HEA, 2019 WL 2053848, at *6 (E.D. Mo. May 9, 2019) ("claims of discrimination as a result of being assigned less desirable routes, failure to receive promotions, denial of vacation requests each were actionable at the time that they occurred"); Borders v. Trinity Marine Products, Inc., No. 1:10-CV-00146 HEA, 2011 WL 1045560, at *3 (E.D. Mo. Mar. 17, 2011) (demotion, failure to promote, and denial of equal pay are separate discrete discriminatory acts). Because Plaintiff has failed to demonstrate that the Court made any manifest error of law with respect to its interpretation of Bazemore or its finding that Plaintiff's Charge was not timely filed, the Court denies Plaintiff's Motion to Alter or Amend the Judgment [ECF No. 27].

    B. Defendant's Motion to Strike

In his reply brief to his Motion to Alter or Amend the Judgment, Plaintiff asserts, for the first time, that his Charge was timely filed because the Charge and complaint "[t]aken as a whole…state a claim of hostile work environment that was ongoing and continuous[.]" [ECF No. 36] Defendant filed a Motion to Strike Plaintiff's reply for improperly asserting a new argument or, in the alternative, requests that the Court grant Defendant leave to file a sur-reply to address Plaintiff's newly raised hostile work environment claim. [ECF No. 37] Plaintiff opposes Defendant's Motion to Strike and requests that the Court dismiss Defendant's motion because it failed to file a memorandum in support of the motion as required by Local Rule 4.01(A). [ECF No. 44] Defendant asks that the Court deny Plaintiff's request to dismiss Defendant's motion based

11

on its technical violation of Local Rule 4.01 because its motion provided substantive legal authority and arguments required in the memorandum under Local Rule 4.01. [ECF No. 45]

"Absent some reason for failing to raise an argument in an opening brief, this court will not consider an argument first raised in a reply brief." United States v. Brown, 108 F.3d 863, 867 (8th Cir. 1997). See also Powell v. St. Francois Cnty., No. 4:14-cv-1230-AGF, 2016 WL 695674, at *1 (E.D. Mo. Feb. 19, 2016) ("a court generally will not consider an issue raised for the first time in a reply brief.").  Despite the fact that Plaintiff's potential hostile work environment claim was repeatedly raised and addressed by both Defendant and the Court during the motion to dismiss proceedings, Plaintiff failed to acknowledge, much less discuss, the potential issue until asserting it in his reply brief on his Motion to Alter or Amend the Judgment.  Plaintiff has not offered any justification for his failure to raise this issue either in response to the motion to dismiss or in his initial brief on the Rule 59(e) motion. Furthermore, Plaintiff's reply brief fails to present any argument or answer to the issue initially raised by Defendant in its motion to dismiss, namely that Plaintiff failed to exhaust any potential hostile work environment claim by alleging facts supporting the claim in his Charge. Consequently, the Court declines to address the merits of Plaintiff's argument that his Charge was timely filed because it presents a hostile work environment claim. Because the Court declines to address Plaintiff's argument, the Court denies as moot Defendant's Motion to Strike Plaintiff's Reply or, in the Alternative, Motion for Leave to File Sur-Reply in Opposition [ECF No. 37].

**IV.     Conclusion**

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Alter or Amend Judgment [ECF No. 27] is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant's Motion to Strike Plaintiff's Reply or, in the Alternative, Motion for Leave to File Sur-Reply in Opposition [ECF No. 37] is **DENIED** as moot.

                                                                          */s/ Patricia L. Cohen*
                                             PATRICIA L. COHEN
                                             UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of October, 2023.